**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| NICOLE SHANDS * | |
| * | |
| Plaintiff * | |
| * | |
| V. * | |
| * | NO: 4:09CV00333  SWW |
| VIRGIL LYNCH; ET AL. * | |
| * | |
| Defendants * | |

**ORDER**

Plaintiff Nicole Shands ("Shands") brings this action pursuant to 42 U.S.C. § 1983 against Dan Ellison ("Ellison"), individually and in his official capacity as the Sheriff of Lawrence County, Arkansas, and Virgil Lynch ("Lynch"), a Lawrence County Sheriff's Deputy. Shands claims that Ellison and Lynch violated her constitutional rights by using excessive force against her and arresting and detaining her without legal cause. Shands also brings supplemental tort claims under state law. Before the court is Defendants' motion for summary judgment (docket entries #11, #12, #13) and Shands' response in opposition (docket entries #18, #19, #20). After careful consideration, and for reasons that follow, Defendants' motion is granted in part and denied in part. The motion is granted to the extent that any claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fifth, Eighth, or Fourteenth Amendments are dismissed with prejudice. All other claims, including Shands' § 1983 claims for Fourth Amendment violations, remain for trial.

**I.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II**.

On June 5, 2008, Shands and Theresa Stewart ("Stewart") attended a bond hearing for a Lawrence County detainee named Daniel Smith ("Smith"). For reasons that are in dispute, Lawrence County Deputy Ted Horton directed Shands and Stewart to leave the courtroom. Shands and Stewart complied with Horton's order and waited in the in the courthouse lobby. By affidavit, Shands and Stewart testify that a jailer approached Shands in the lobby and asked her to retrieve Smith's personal belongings from the Sheriff's Office. *See* Shands Aff., ¶6 (docket entry #20, Ex. A); Stewart Aff., ¶6 (docket entry #20, Ex. B). Shands testifies that when she

attempted to retrieve Smith's belongings, Defendant Lynch threatened to arrest her, stating: "I'm fixing to arrest that man, he's trying to sneak something in here." Shands Aff., ¶ 7 (docket entry #20, Ex. A); *see also* Stewart Aff., ¶7 (docket entry #20, Ex. B).

Shands recalls that she responded to Lynch's statement by pulling her pockets inside out (demonstrating that she had nothing in them) and informing Lynch that she was not a man and that he was free to search her. According to Shands, Lynch then approached her and said, "You're being a smart mouth and if you don't stop, you are going to be arrested." *Id*., ¶9. Shands states that Defendant Ellison stepped out of his office and requested that she and Stewart leave the building. According to Shands, while she was walking away to exit the building, Lynch tackled her from behind. Shands testifies:

> He slammed me into the door and the door did not open. I bounced off the door and he slammed me against the door again and it opened. I started to crying and was shocked. . . . Lynch then reached around me and grabbed me from behind holding onto my breasts and flung to the side slamming me into the handicap rail. He then grabbed me by the arms and tore open my finger. I started bleeding and Lynch handcuffed my hands behind my back. Lynch grabbed me up and started jerking me through the doors into the jail.

*Id*. ¶¶16-17. Shands testifies that she was held in a jail cell until her father came and posted bond for her release.

Lynch's and Ellison's explanation of events has little in common with Shands' and Stewart's account. By affidavit, Lynch and Ellison testify that when Shands entered the Sheriff's Office on June 5, 2008, she was irate and began screaming at deputies. Ellison states that he and Lynch repeatedly told Shands to calm down or she would be removed from the building. According to Ellison, after Shands continued "acting belligerent" and screaming, he and Lynch escorted her out of the building. Ellison and Lynch report that Shands continued

screaming and that Lynch arrested her for disorderly conduct. Ellison and Lynch testify that neither of them used unnecessary force against Shands. Shands has come forward with evidence that she suffered a bruised arm and cuts to her wrist and finger as a result of Lynch's use of force. *See* docket entry #20, Attachs. #1, #2, #3, #4, #5, #6. In addition to physical injuries, Shands alleges that she suffered emotional distress as a result of the June 5, 2008 incident.

Shands sues Ellison and Lynch under § 1983, claiming that they violated her Fourth Amendment rights by using excessive force against her and arresting and detaining her without probable cause. She also brings supplemental claims under state law for assault and battery, false imprisonment, and outrage.

### III.

Defendants move for summary judgment on the following grounds: (1) Shands cannot prevail with claims under § 1983 against the County[1] because she has no evidence of an official policy or custom that caused her alleged constitutional injuries; (2) Shands is without evidence that Ellison took part in an alleged constitutional violation; (3) Ellison and Lynch are entitled to qualified immunity; and (4) Shands fails to state a claim for additional constitutional violations or violations of state law. The Court will consider each argument separately.

### County Liability

It is well settled that a plaintiff may establish local government liability under § 1983 by proving that her constitutional rights were violated by an "action pursuant to official [local government] policy" or misconduct so pervasive among non-policymaking employees of the

---

[1] Shands' official capacity claims against Ellison is tantamount to a claim against Lawrence County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[local government] "as to constitute a 'custom or usage' with the force of law." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)(quoting *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Id. (*quoting *Jane Doe A. v. Special Sch. Dist,* 901 F.2d at 642, 645 (8th Cir. 1990)). Alternatively, "custom or usage" is demonstrated by: (1) the existence of continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation. *Id.* (quoting *Jane Doe A*., 901 F.2d at 646).

Defendants contend that Shands' complaint is void of allegations demonstrating an official custom or policy that resulted in a violation of her constitutional rights. In her complaint, Shands indicates that she seeks to hold the County liable under a failure-to-train theory.[2] However, in her brief in opposition to summary judgment, she argues that Sheriff

---

[2]The pertinent portion of Shands' initial pleading reads as follows:

> The action is against the Sheriff Dan Ellison as the supervisory officer responsible for the conduct of the defendant and for the Sheriff's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct and against Lawrence County, Arkansas, as the employer of the sheriff department personnel, which is sued as a person under 42 U.S.C. § 1983."

Ellison was an official decision maker, thus "his actions constitute official policy for the County." Docket entry #19, at 6.

An unconstitutional government policy can be inferred from a single decision taken by the highest officials responsible for setting policy in a particular area of the government's business. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915 (1988); *see also Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007). However, government liability attaches only where the decisionmaker possesses final authority to establish policy with respect to the action ordered. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292 (1986).

Included in the record is a document entitled "Arrest Procedures," which Defendants introduce as Lawrence County's policy concerning the arrest and detention of persons. *See* docket entry #12, Ex. E; *see also* Defs.' Brief at 5. The written policy provides that sworn officers may make an arrest based on a warrant or probable cause to believe that a crime has been committed. Additionally, the policy provides for the use of force, but only such force as is necessary to make an arrest. Shands does not dispute that the document offered is the official

---

To establish County liability under a failure-to-train theory, Shands must prove the failure to train in a relevant respect demonstrated a "deliberate indifference" to her constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989);*Larson v. Miller,* 76 F.3d 1446, 1454 (8th Cir.1996). To show deliberate indifference, Shands must prove the County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Larson,* 76 F.3d at 1454 (citation omitted). Notice may be implied when (1) the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of misconduct indicates that the current training is insufficient to protect citizens' constitutional rights. *Id.* It is undisputed that Lynch received completed an Arkansas Commission of Law Enforcement Standards and Training course, and Shands present no evidence that the County had notice that Lynch's training was inadequate and likely to result in constitutional violations.

policy of Lawrence County, and she acknowledges that the policy as written does not call for unconstitutional action.

Viewing the record in a light most favorable to Shands, Ellison stood by as Lynch violated the County's policy governing arrests and the use of force. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the official's departures from them, constitute the act of the local government. Thus, if a body such a quorum court issued the County's official policies governing arrests, and Ellison merely possessed discretion in making arrests and employing force, his conduct would not give rise to County liability. *See Pembaur*, 475 U.S. at 483 n.12, 106 S.Ct. at 1300 n.12("The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Here, however, Defendants provide no information regarding the origin of the County's written policy, and the current record does not permit the Court to find, as a matter of law, that Ellison lacked final policy making authority regarding arrests and the use of force. Accordingly, the current record does not warrant summary judgment in favor of the County.

**Section 1983 - Individual Capacity Claims Against Lynch.**

Lynch asserts that he is entitled to summary judgment on Shands' excessive force claim against him because the complaint lacks specific allegations regarding physical injuries she suffered as a result of his alleged use of force. Additionally, Lynch argues that he is entitled to qualified immunity.

Qualified immunity shields government employees acting within the scope of their duties from suit so long as their conduct does not "violate clearly established statutory or constitutional

rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Two questions guide the determination of whether a defendant is entitled to qualified immunity. The first is whether the facts, viewed in a light most favorable to the plaintiff show that the defendant's conduct violated a federal constitutional or statutory right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a constitutional right has not been violated, the defendant is entitled to qualified immunity, and the claim cannot proceed. *See id.* If, however, a constitutional right may have been violated, the court must inquire whether the right was clearly established. *Id.*

All claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989). The test is whether the amount of force used was objectively reasonable under the particular circumstances that confronted law enforcement officers. *See Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir.2004) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)). A court may also consider the results of the use of force in determining whether a defendant used excessive force. *See Foster v. Metropolitan Airports Com'n,* 914 F.2d 1076, 1082 (8th Cir. 1990)(finding that allegations regarding pain were insufficient and plaintiff needed some evidence of "a more permanent injury" caused by the use of excessive force).

The Court finds Shands' and Stewart's testimony, along with medical reports documenting Shands' injuries, sufficient to create a genuine issue of material fact as to whether Lynch used an unreasonable amount of force against Shands. Lynch's and Ellison's testimony to the contrary presents a credibility issue for the fact finder. Furthermore, the constitutional right to be free from excessive force was clearly established on the date of Shands' arrest; thus Lynch

is not entitled to qualified immunity on this claim.

### Section 1983 – Individual Capacity Claims Against Ellison

Ellison notes that a supervisor is not vicariously liable under § 1983 for an employee's unconstitutional activity, and he argues that Shands is unable to show a causal link between his conduct and the violation of her constitutional rights.  Supervisor liability under § 1983 is limited to incidents where the supervisor is personally involved in the alleged constitutional violation, or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).   "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he or she might see." *Id*. Additionally, a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of force by another official.  See *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

Viewing the facts in a light most favorable to Shands, the evidence presents a submissible case that Lynch used excessive force against her and that Ellison observed that use of excessive force and had an adequate opportunity to intervene but unreasonably failed to do so.  Additionally, as of June 5, 2008, it was clearly established that a state actor may be liable for an unreasonable seizure if he fails to intervene to prevent an unreasonable use of force by another official.  See *Krout*, 583 F.3d at 565.  Accordingly, Ellison is not entitled to qualified immunity.

### Additional Claims

Defendants move to dismiss "unspecified causes," asserting that Shands "alleges without specificity a list of Federal and State causes . . . . without supporting facts or allegations constituting a cause of action."   The Court understands Defendants' argument to mean that they

move to dismiss Shands' additional claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Constitutional Claims.  In addition to Fourth Amendment claims for excessive force and wrongful arrest, the complaint contains cursory allegations that Defendants violated Shands' rights under the First, Fifth, Eighth, and Fourteenth Amendments.  The complaint is void of factual allegations that would support plausible claims under these amendments, and the absence of any reference to such claims in Shands' opposition brief indicates that she does not intend to pursue them.  In any event, the Court agrees that Shands has failed to allege facts necessary to state claims under the First, Fifth, Eighth, and Fourteenth Amendments and that the Fourth Amendment is the sole textual source of constitutional protection for the sort of governmental behavior alleged in this case.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  Accordingly, Shands' ostensible claims under the First, Fifth, Eighth, and Fourteenth Amendments will be dismissed with prejudice.

State Law Claims.  Shands brings claims under state law for assault and battery, false imprisonment, and outrage.  In addition to asserting generally that Shands fails to allege her state law claims with specificity, Defendants assert that there is no mention in the complaint that Defendants are not immune from tort liability.

As a threshold matter, the Arkansas statute providing immunity to counties and other political subdivisions, Ark. Code. Ann. § 21-9-301, does not apply to intentional wrongs such as those alleged here.  *See Sch. Dist. No. 4 v. Circuit Court of Crittenden County*, 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994).  Accordingly, Defendants are not entitled to tort immunity.

With respect to Shands' claims for assault and battery, in Arkansas, assault is defined as

an "intentional attempt by a person, by force or violence, to do an injury to the person of another, or as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery." *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (2003). And battery is defined in Arkansas as a "wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, the unpermitted application of trauma by one person upon the body of another person." *Id*.

Here, Shands alleges that Lynch intentionally and without cause "slammed" her into a door, grabbed her breasts and "slammed" her down against the railing of a wheelchair ramp. Such actions, if true, would amount to assault and battery under Arkansas law. Accordingly, Defendants' motion for summary judgment on these claims will be denied.

False imprisonment, under Arkansas law, is "the unlawful violation of the personal liberty of another, consisting of detention without sufficient legal authority. Any express or implied threat of force whereby one is deprived of this liberty or compelled to go where one does not wish to go is imprisonment . . . . " *Limited Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 83-84, 786 S.W.2d 248, 250 (1994). Shands alleges that Lynch arrested and detained her without probable cause. The Court finds these allegations sufficient to state a claim for false imprisonment.

In Arkansas, the tort of outrage has four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community'; (3) the actions of the defendant

11

were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007).  Viewing the complaint in a light most favorable to Shands, the Court cannot say that she fails to allege a plausible claim for outrage under state law.

## IV.

For the reasons stated, Defendants' motion for summary judgment (docket entry #11) is GRANTED IN PART AND DENIED IN PART as follows: Plaintiff's claims for violations of the First, Fifth, Eight, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE, and Plaintiff's claims for violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and her claims for assault, battery, false imprisonment and outrage under state law remain for trial.

IT IS SO ORDERED THIS 12TH   DAY OF MAY, 2010.


                                         /s/Susan Webber Wright
                                         UNITED STATES DISTRICT JUDGE